UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL GERARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:12CV2135 CDP |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the

Commissioner's final decision denying Michael Gerard's application for

supplemental security income benefits under Title XVI of the Social Security Act,

42 U.S.C. §§ 1381 *et seq*.  Claimant Gerard brings this action alleging disability

due to degenerative disc disease, impairments of the right elbow and shoulder,

osteoarthritis, and hypertension.  The Administrative Law Judge concluded,

however, that Gerard is not disabled, and Gerard now appeals that decision.

Because I find that the overall decision denying benefits was supported by

substantial evidence, I will affirm.

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14,
2013.  As such, she should be substituted for Michael J. Astrue as the defendant in this suit.  Fed.
R. Civ. P. 25(d).

## Procedural History

On May 14, 2009, Michael Gerard filed for supplemental security income payments.  The Social Security Administration denied Gerard's application at the initial level.  Missouri is one of several states participating in modifications to the disability determination procedures, which include the elimination of the reconsideration step in the administrative appeals process.  20 C.F.R. § 416.1406, 416.1466 (2011).  Gerard's appeal in this case therefore proceeded directly from this initial denial to the administrative law judge level.  Gerard appeared and testified at a hearing on June 23, 2011.  The ALJ issued an opinion on July 8, 2011 upholding the denial of benefits.  Gerard filed a request for review with the Appeals Council on August 22, 2011.  The Appeals Council denied Gerard's request for review on September 27, 2012.  Accordingly, the ALJ's determination stands as the Commissioner's final determination.  Gerard filed this request for review on November 15, 2012.

## Testimony Before the ALJ

At the time of the administrative hearing, Gerard was fifty-one years old. He had completed nine years of schooling.  Gerard stated that he lived with his uncle, in his basement.

Gerard stated that he did not work at the time of the hearing.  His most recent employment was in 2003, when he worked for three months as a machine

operator for Brentwood Plastics.  Gerard testified that before working as a machine operator, he worked on and off for twenty-five years in landscaping.  He stated that he did both design and building work, but that he had not worked in landscaping for the past five or six years.  Gerard testified that he also worked about six months at All Bright Auto Cleanup, where he detailed automobiles.  Gerard stated that he worked as a cabinet maker in the early 1990s.  Gerard testified that he hurt his back in 1980, it has gotten worse over time, and it was the reason he stopped working in the landscaping business as well as at Brentwood Plastics.

Gerard testified that his medications included Hydrocodone and Folic Acid. He testified that his back bothered him all the time.  In addition to his back pain, Gerard testified that one of his elbows was bulged out, and he had pain in his right knee, his left foot, and his right shoulder.  He stated that he did not have any fractures or arthritis.  Gerard testified that he went to doctors for some examinations, but had not seen a doctor for treatment of his pain because he could not afford it.  Gerard testified that he had seen Dr. Danielylan the week before the hearing because of dizziness.  He further stated that he was on medication for one week, and that Dr. Danielylan wanted Gerard to get an MRI.  Gerard testified that the dizziness got worse when he jumped up quickly, or moved his head side to side.  He further stated that he was going to discontinue the medication because it did not alleviate his dizziness and caused him headaches.

Gerard testified that when he woke up in the morning, it took him an hour before he could get motivated enough to do anything because he was in pain—primarily in his back—and scared that any activity would hurt.  He stated that he had to do everything in moderation.  Gerard described the back pain as a pinching, and that it caused a shooting sensation down his right leg.  In order to loosen it up he would slowly begin doing activities, and occasionally lie back down to relieve the pressure on his back.  He stated that he would lie down at least once a day, and on a bad day two or three times.  Gerard testified that he would lie down for fifteen or twenty minutes at a time.  He testified that he could only be on his feet for fifteen minutes before his back stiffened up again.  Gerard further testified that he could not sit for more than fifteen minutes before he had to get up and move or lie down.  He stated that he used a wheelchair, which helped keep him sitting straight, and also a special office-type chair.  Gerard had a cane at the hearing, and had been using it for a couple of years for stability.  Gerard stated that he only slept two or three hours a night because of his back pain.

Gerard testified that his right knee felt like it wanted to bend backwards, and that he would have swelling in the knee.  He stated that the knee pain was brought on by standing and walking.  Regarding his right elbow, Gerard testified that he only experienced pain if he overused it, and then he would get a tingling sensation to the tips of his fingers.  Gerard stated that he believed he dislocated his right

shoulder at some time in the past, and although it had not totally cleared up, it did not bother him much any more.

Gerard testified that he had trouble carrying a gallon of milk, and that lifting hurt his back and knees.  He stated that he went grocery shopping with his girlfriend, that it took less than an hour, and that although he did not stop to rest during shopping trips he felt like he should.  Gerard testified that he did not drive because he did not have a driver's license.  He stated that he did all the housework because his uncle was not in good health.  He swept and mopped, but needed help with mopping because of his back.  Gerard also stated that he did the cooking for himself and his uncle.

## Medical Records

On January 5, 2009, Jack C. Tippett, M.D., performed a consultative examination of Gerard in conjunction with a prior application for disability benefits.  Dr. Tippett observed that Gerard got up from a chair with slight difficulty, walked with short, halting steps, and appeared unsteady, but did not use a cane and had no definite limp.  He further noted that Gerard had mild limitation of motion in his neck and a rather rigid lower back with no significant bending to the left or right.  Dr. Tippett noted tenderness in the upper back and lumbar region. Gerard had a full range of motion in the right shoulder but tenderness in the acromioclavicular region and complained of a great deal of pain.  Dr. Tippett also

noted that Gerard's right elbow had slight tenderness, no significant swelling, and would not straighten the last twenty degrees nor flex the last ten degrees.  Dr. Tippett noted that Gerard had a full range of motion in the remainder of the upper extremities, no tenderness, good strength of grasp, and normal fine finger motion. Gerard also had a normal range of motion in his hips, right knee, and left knee.  Dr. Tippett noted tenderness in Gerard's right knee and that the patellar mechanism was slightly loose on the left side of his left knee.  Dr. Tippett's clinical impressions included flexion contracture of the right elbow, impingement syndrome of the right shoulder, exostosis of the dorsum of the left foot, chronic low back strain, and chronic intermittent right knee strain.

Dr. Tippett also completed a statement of ability to do work-related activities on January 5, 2009.  He opined that Gerard could occasionally lift and carry up to ten pounds, could sit for thirty minutes without interruption, stand and walk for five minutes without interruption, and could sit for eight hours in a work day.  Dr. Tippett further noted that Gerard had no limitations of his left hand, and with his right hand could continuously reach overhead, frequently reach (non-overhead), and occasionally handle, finger, and push/pull.  Finally, he reported that Gerard could occasionally climb stairs and ramps, balance, stoop, and kneel, but could never climb ladders or scaffolds, crouch, or crawl.

On May 14, 2009, C. Lira of the Social Security Field Office met with

Gerard and completed a disability report.  Lira noted that Gerard had difficulty

with answering questions and walking.  On January 25, 2010, Gerard saw Mary

Fran Digregario, APN, complaining of headaches, back pain, right shoulder pain,

and hypertension.  Gerard also reported anxiety and depression.  Gerard was

refered to William Feldner, DO, for further evaluation.

On February 17, 2010, Gerard was evaluated by Gitry Heydebrand, Ph.D. on

referral for a psychological consultation from the Missouri Department of Social

Services.  Gerard told Dr. Heydebrand that he had back, elbow, knee, and shoulder

pain, trouble sitting, standing, or walking, and difficulty sleeping.  Gerard also told

Dr. Heydebrand that he quit his last job because he could no longer do any heavy

lifting.  When Dr. Heydebrand asked Gerard to describe his typical day, he

responded that he did chores such as cutting the grass, cooking and cleaning,

taking care of the household, and supervising his uncle 24 hours a day.

On February 25, 2010, Gerard saw Dr. Feldner for back and arm pain.  Dr.

Feldner noted moderate tenderness of the lumbosacral spine and right elbow.  He

diagnosed Gerard with degeneration of the lumbar disc, generalized osteoarthritis,

and deformity of the right elbow.  Dr. Feldner ordered x-rays of Gerard's lower

spine and prescribed Hydrocodone-Acetaminophen.  Gerard underwent x-rays that

same day.  Carl Aschkenasi, M.D., interpreting the x-rays, noted that Gerard's

lumbar spine alignment was normal, that there was mild disc space narrowing at

L3-L4, moderate disc space narrowing at L4-L5, and severe disc space narrowing at L5-S1. Dr. Aschkenasi also noted prominent anterior spurring, no vertebral body height loss, and normal coronal alignment. Dr. Aschkenasi concluded that Gerard had moderate-to-severe degenerative disc disease of the lower lumbar spine. On March 25, 2010, Gerard returned to Dr. Feldner, who again noted deformity of Gerard's right elbow and degeneration of the lumbar disc.

On June 17, 2011, Gerard saw Anahit Danielyan, M.D., complaining of dizziness and hypertension. Dr. Danielyan prescribed Meclizine to be taken three times daily, as needed. On July 13, 2011, Gerard had an MRI which revealed no acute intracranial pathology. He had an x-ray of the lumbar spine the same day, which revealed mild leftward rotation of the lumbar spine. Dr. Danielyan opined that the x-ray showed lumbar levoscoliosis with L3-L4 through L5-S1 degenerative disk height loss and accompanying spondyloarthropathy but no fracture or subluxation.

## Legal Standard

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the ALJ's conclusion. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir.

2000).  As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, *id.*, or because the court would have decided the case differently.  *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992).  In determining whether existing evidence is substantial, a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it."  *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 200) (citation omitted).

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

(1)  the credibility findings made by the Administrative Law Judge;

(2)  the education, background, work history, and age of the claimant;

(3)  the medical evidence from treating and consulting physicians;

(4)  the plaintiff's subjective complaints relating to exertional and non-exertional impairments;

(5)  any corroboration by third parties of the plaintiff's impairments; and

(6)  the testimony of vocational experts when required which is based upon a proper hypothetical question.

*Brand v. Secretary of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in the social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(i)(l); 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a) and 416.905(a).  In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five-step procedure.

First, the Commissioner must decide if the claimant is engaging in substantial gainful activity.  If the claimant is engaging in substantial gainful activity, he is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical or mental ability to do basic work activities.  If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant can perform his past relevant work.  If

the claimant can perform his past relevant work, he is not disabled.

If the claimant cannot perform his past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy.  If not, the Commissioner declares the claimant disabled.  20 C.F.R. §§ 404.1520 and 416.920.

When evaluating evidence of subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence.  *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984).  The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole.  *See, e.g., Battles v. Sullivan*, 992 F.2d 657, 660 (8th Cir. 1990).  In considering the subjective complaints, the ALJ is required to consider the factors set out by *Polaski v. Hecler*, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> >  1.  the claimant's daily activities;
> >
> >  2.  the duration, frequency, and intensity of the pain;
> >
> >  3.  precipitating and aggravating factors;
> >
> >  4.  dosage, effectiveness and side effects of medication;
> >
> >  5.  functional restrictions.

*Id.* at 1322.

## The ALJ's Findings

The ALJ found that Gerard was not disabled within the meaning of the Social Security Act from May 14, 2009[2] through the date of the decision.  He issued the following specific findings:

1.  The claimant has not engaged in substantial activity since May 14, 2009, the application date (20 CFR 416.971 *et seq.*).

2.  The claimant has the following severe impairments:  degenerative disc disease of the lumbar spine; flexion contracture of the right elbow; impingement syndrome of the right shoulder; generalized osteoarthritis; and hypertension (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4.  The claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 416.967(b).

5.  The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.  The claimant was born on March 10, 1960 and was 49 years old, which is defined as a younger individual age 18-49, on the date the application was filed.  The claimant subsequently changed age category to closely approaching advanced age (20 CFR 416.963).

---

[2] Gerard previously filed an application for supplemental security income and disability insurance benefits on August 11, 2005 alleging disability beginning January 1, 2003.  The claims were initially denied on September 15, 2005.  He again filed for supplemental security income benefits on October 23, 2006, and received an initial denial on January 4, 2007.  Since more than two years had passed between the initial denial dates and the bringing of the present claims, *see* 20 CFR 416.1488-1489), the ALJ refused to reopen those claims, and only considered Gerard's claims from the date the current application was filed.

7.     The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.     Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.    The claimant has not been under a disability, as defined in the Social Security Act, since May 14, 2009, the date the application was filed (20 CFR 416.920(g)).

The ALJ concluded that Gerard's alleged physical impairments of right knee strain and exostosis of the dorsum of the left foot were non-severe.  He further concluded that all of Gerard's alleged mental impairments, including depressive disorder, pain disorder, alcohol dependence, and cannabis abuse, were non-severe and did not cause more than mild limitations in any of the four broad functional areas set out in the disability regulations, 20 CFR, Part 404, Subpart P, Appendix 1.

The ALJ considered all of Gerard's symptoms in determining his residual functional capacity, including the extent to which those symptoms could be reasonably accepted as consistent with the objective medical evidence.  He considered Gerard's relatively full range of motion and mobility.  The ALJ

assigned little weight to the opinion of Dr. Tippett because he found the opinion to
be inconsistent with the objective medical evidence, including Dr. Tippett's own
findings on examination.  The ALJ further concluded that although Gerard's
medically determinable impairments could reasonably be expected to cause the
alleged symptoms, Gerard's statements concerning the intensity, persistence, and
limiting effects of the symptoms were not credible to the extent they were
inconsistent with the rest of the evidence.  In evaluating Gerard's credibility, the
ALJ placed particular weight on Gerard's limited treatment history, inconsistent
allegations of unsubstantiated symptoms, and "robust" activities of daily living.

## Discussion

When reviewing a denial of Social Security benefits, a court cannot reverse
an ALJ's decision simply because the court may have reached a different outcome,
or because substantial evidence might support a different outcome.  *Jones ex rel.
Morris v. Barnhard*, 315 F.3d 974, 977 (8th Cir. 2003); *Woolf v. Shalala*, 3 F.3d
1210, 1213 (8th Cir. 1993).  Instead, the court's task is a narrow one:  to determine
whether there is substantial evidence on the record as a whole to support the ALJ's
decision.  42 U.S.C. § 405(g); *Estes v. Barnhard*, 275 F.3d 722, 724 (8th Cir.
2002).  On appeal Gerard argues that the ALJ failed to fully develop the record,
that the ALJ failed to properly assess Gerard's RFC, and that the ALJ erred in
relying on the grids.  Because I find that the ALJ's decision is supported by

substantial evidence in the medical record, I will affirm.

<u>The ALJ was not required to further develop the record</u>

Gerard argues that the ALJ failed to fully develop the record on multiple issues.  "'Social security hearings are non-adversarial,' and an ALJ has a duty to fully develop the record."  *Johnson v. Astrue*, 627 F.3d 316, 319 (8th Cir. 2010) (quoting *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)).  "An ALJ should recontact a treating or consulting physician if a critical issue is undeveloped."  *Id.* at 320 (citing *Elis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005)).  "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."  *Id.* (quoting *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994)).

First, Gerard argues that the ALJ erroneously relied on the silence of Gerard's physicians regarding Gerard's functional abilities.  *See Lauer v. Apfel*, 245 F.3d 700, 705 ("[W]e conclude that the absence of an opinion does not constitute substantial evidence supporting the ALJ's findings").  During his discussion of the evidence regarding Gerard's RFC, the ALJ wrote in part, "The claimant's physicians have never advised him to abstain from any activities, such as prolonged standing or walking or heavy lifting."  I find that there was substantial evidence on the record independent of the physicians' silence to support

the ALJ's decision.  "An ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision."  *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)). Before mentioning the lack of restrictions given by Gerard's physicians, the ALJ discussed at length the medical records regarding Gerard's range of motion, mobility, and strength as evidence by examinations, observations, and medical imaging tests.

Second, Gerard argues that the ALJ should have sought clarification from Dr. Aschkenasi and Dr. Feldner regarding an apparent discrepancy in their reports. Dr. Aschkenasi, the radiologist interpreting Gerard's x-rays of February 25, 2010, noted that there was mild disc space narrowing at L3-L4, moderate disc space narrowing at L4-L5, and severe disc space narrowing at L5-S1.  Dr. Aschkenasi concluded that Gerard had moderate-to-severe degenerative disc disease of the lower lumbar spine.  Dr. Feldner, Gerard's treating physician, interpreted the x-rays as showing mild to moderate degenerative changes.

The thorough opinion of the ALJ makes it clear he considered all of the medical evidence, including Dr. Aschkenasi's notes, weighed the evidence in accordance with the applicable standards, and attempted to resolve any conflicts. This is "precisely what an ALJ is instructed to do."  *Hudson ex rel. Jones v.*

*Barnhart*, 345 F.3d 661, 666-67 (8th Cir. 2003) (citing *Bentley v. Shalala*, 52 F.3d

784, 785 (8th Cir. 1995) ("It is the ALJ's function to resolve conflicts among 'the

various treating and examining physicians.'" (citations omitted))).

Finally, Gerard argues that the ALJ erred in failing to obtain a March 2010

x-ray of Gerard's right elbow.  Again, I find that the ALJ was not required to do so

because "other evidence in the record provides a sufficient basis for the ALJ's

decision."  *Anderson*, 51 F.3d at 779.  Although the x-ray itself is not part of the

record, the ALJ discussed Dr. Feldner's March 25, 2010 report, which included Dr.

Feldner's interpretation of the x-ray.  Further, Gerard did not explain how

obtaining the x-ray would have led to a different result.  *See Shannon v. Chater*, 54

F.3d 484, 488 (8th Cir. 1995) ("[R]eversal due to failure to develop the record is

only warranted where such failure is unfair or prejudicial").  The ALJ's findings

were supported by substantial evidence regarding all of these issues, and he was

therefore not required to further develop the record as Gerard now argues.

<u>The ALJ's RFC Determination was Supported by Substantial Evidence</u>

Gerard also argues that the ALJ failed to properly assess his RFC by only

describing his RFC in general terms, not limiting Gerard's use of his right arm, and

not properly considering the effects of Gerard's pain.  A claimant's residual

functional capacity is what he or she can still do despite physical or mental

limitations.  20 C.F.R. pt. 404.1545(a); *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir.

2001).  The ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000).  Although the ALJ is not limited to considering only medical evidence in making this assessment, the ALJ is "required to consider at least some supporting evidence from a professional," because a claimant's residual functional capacity is a medical question.  *Lauer*, 245 F.3d at 704.

Here, the ALJ determined:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 416.967(b).

In his brief, Gerard suggests that the ALJ described his RFC in only general terms. To the contrary, the ALJ repeatedly stated Gerard could perform the "full range" of light work.  Light work is defined as:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 CFR 416.967(b).  The ALJ based this determination on substantial evidence from the medical records.  The ALJ noted that Gerard demonstrated a full range of motion of the right shoulder despite his complaints of pain, and that although there was decreased range of motion of the right elbow, there was no swelling and only

-18-

mild tenderness.  The ALJ also relied on multiple doctors' reports which indicated Gerard's straight-leg raise tests were negative, he walked without a limp, and his strength and tone were normal.

Although Dr. Tippett, the consultative examiner, determined Gerard to have a more restrictive RFC, the ALJ gave little weight to this opinion.  The ALJ noted internal inconsistencies with Dr. Tippett's opinion, such as simultaneously finding that Gerard had normal range of motion in the bilateral wrists, normal bilateral grip strength, and normal abilities to extend the hands, make fists, and oppose the fingers, but then set severe limitations on Gerard's ability to reach, handle, push/pull, and finger.  The ALJ also noted inconsistencies between Dr. Tippett's opinion and the record as a whole.  Considering these inconsistencies and the fact that medical opinions from consultative sources are typically entitled to less weight than medical opinions from treating sources, the ALJ was justified in assigning little weight to Dr. Tippett's opinion.  *See Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008).

Furthermore, the ALJ indicated that he did not find Gerard to be wholly credible, and thus discounted his account of pain and limitations accordingly. Evidence of pain and severity of other symptoms is necessarily subjective in nature.  Therefore, an ALJ must look to more than just objective medical evidence, or the lack thereof, in determining whether and to what extent a claimant's

-19-

symptoms affect the ability to perform work-related activities. *Halpin v. Shalala*, 999 F.2d 342, 346 (8th Cir. 1993); *Delrosa v. Sullivan*, 922 F.2d 480, 485 (8th Cir. 1991). Under the framework set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1321-22 (8th Cir. 1984), an ALJ must fully consider all evidence relating to the subjective complaints, including the claimant's work record, as well as observations of the claimant by others (including treating and examining doctors) as to such matters as daily activities; the intensity, duration, and frequency of the symptoms and conditions causing and aggravating the symptoms; and functional limitations. *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008). An ALJ is permitted to discount the claimant's complaints if they are "inconsistent with the evidence as a whole." *Id.* (quoting *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007)). When discounting a claimant's complaints, the ALJ is required to "detail the reasons for discrediting the testimony and set forth the inconsistencies found." *Ford*, 518 F.3d at 982 (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)).

Here, the ALJ properly considered Gerard's testimony and made credibility findings supported by evidence in the record. The ALJ determined that Gerard's testimony was not credible in part because there was a lack of medical evidence supporting his claims. Although an ALJ may not discount testimony solely due to a lack of medical evidence, this is one factor that may properly be considered.

*Halpin v. Shalala*, 999 F.2d 342, 346 (8th Cir. 1993).  In addition to discrepancies between Gerard's alleged symptoms and pain and the medical records as discussed above, the ALJ also considered inconsistencies within Gerard's testimony and written reports.  The ALJ found that although Gerard's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Gerard's statements about the intensity, persistence, and limiting effects of those symptoms were not credible.  The ALJ noted Gerard's limited treatment history, inconsistent allegations of unsubstantiated symptoms, and robust activities of daily living.  *See, e.g., Van Vickle v. Astrue*, at 828 (ALJ may discount claimant's subjective complaints if there are inconsistencies in record as a whole); *Pelkey v. Barnhart*, 433 F.3d 575, 578-79 (8th Cir. 2006) (credibility can be discounted based on reported daily activities).  The ALJ's RFC determination was stated with adequate specificity, supported by substantial evidence, and based on the ALJ's properly-considered credibility determination.

        <u>The ALJ Did Not Error by Failing to Obtain Vocational Expert Testimony</u>

        Gerard also argues that the ALJ erred by not obtaining testimony from a vocational expert in light of Gerard's alleged nonexertional impairment of pain. There is a general rule that, "If a claimant has a nonexertional impairment, the Guidelines and grid are not controlling and cannot be used to direct a conclusion of disabled or not disabled without regard to other evidence such as vocational

testimony." *McCoy v. Schweiker*, 683 F.2d 1138, 1148 (8th Cir. 1982) (abrogated on other grounds).  However, the Eighth Circuit has parsed out nuanced exceptions to this rule where "The ALJ finds, and the record supports the finding, that the nonexertional impairments do not *significantly* diminish the claimant's RFC to perform the full range of activities listed in the guidelines." *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012) (quoting *Reed v. Sullivan*, 988 F.2d 812, 816 (8th Cir. 1993)).  Where the extent of the nonexertional limitation depends on the credibility of subjective testimony about pain, the ALJ may rely solely on the Guidelines under the exception because pain is closely related to the claimant's exertional ability.  *Brock*, 674 F.3d at 1065 (citing *Wheeler v. Sullivan*, 888 F.2d 1233, 1238-89 (8th Cir. 1989)).

Here, Gerard argues that his pain constitutes a nonexertional impairment that requires the testimony of a vocational expert.  The Eighth Circuit has made clear that the ALJ may rely solely on the Guidelines where the extent of the nonexertional limitation depends on the credibility of subjective testimony about pain.  The ALJ discounted Gerard's credibility in reporting his alleged pain, and as discussed above, this conclusion was supported by substantial evidence on the record.  *See Pirtle v. Astrue*, 479 F.3d 931, 935 (8th Cir. 2007) (quoting *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to

the ALJ's credibility determination.")).  The ALJ's determination that Gerard's nonexertional impairment did not significantly diminish Gerard's RFC was thus supported by substantial evidence on the record.

 For the reasons discussed above, I find that the decision denying benefits was supported by substantial evidence, and I will affirm the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of October, 2013.